1

2                           UNITED STATES DISTRICT COURT

3                         NORTHERN DISTRICT OF CALIFORNIA

4

5    UNITED TACTICAL SYSTEMS LLC,              Case No.  14-cv-04050-MEJ

6                Plaintiff,
                                               **[REDACTED VERSION]***
7         v.                                   **ORDER DENYING MOTIONS TO**
                                               **DISMISS FOR LACK OF PERSONAL**
     REAL ACTION PAINTBALL, INC., et al.,      **JURISDICTION AND VENUE**
8

9                Defendants.                   **ORDER CONSOLIDATING RELATED**
     ─────────────────────────────────        **ACTIONS AND DENYING MOTIONS**
10   REAL ACTION PAINTBALL, INC.,              **TO DISMISS AND MOTIONS TO**
                                               **STRIKE AS MOOT**
11                Plaintiff,

12        v.                                   Case No.  14-cv-02435-MEJ

13   ADVANCED TACTICAL ORDNANCE
     SYSTEMS, LLC, et al.,
14
                 Defendants.
15

16

17                                  **INTRODUCTION**

18        Real Action Paintball, Inc. ("Real Action") and United Tactical Ordnance Systems LLC

19   ("UTS") are competitors in the irritant projectile market.  They have sued and counter-sued one

20   another as well as related parties in the above-captioned actions over disputes involving the

21   "PepperBall" trademark, unfair competition claims, and other issues.  Pending before the Court are

22   Motions to Dismiss for Lack of Personal Jurisdiction or Lack of Venue by Perfect Circle

23   Projectiles LLC, Gary Gibson, Michael Blumenthal, and David Piell (the "Moving Parties").

24   ATO Dkt. Nos. 13 & 39; UTS Dkt. No. 96.[1]  Real Action has also recently filed a Motion to

25   Amend its Complaint.  ATO Dkt. No. 153.  Having considered the parties' positions, relevant

26   legal authority, and the record in this case, the Court **DENIES** the Motions for the reasons set

27   forth below.
     ─────────────────────────────
28   [1] Citations referring to "ATO Dkt. No." are found in the 14-2435 case, whereas citations referring
     to "UTS Dkt. No." are found in the 14-4050 case.

United States District Court
Northern District of California

1    Additionally, in the process of reviewing the parties' motions, pleadings, and related

2 materials, the Court has determined that the above captioned actions involve common questions of

3 law and fact.  Separate consideration of the claims in these cases wastes time and effort by the

4 Court and the parties.  Consequently, the Court consolidates these actions pursuant to Federal Rule

5 of Civil Procedure 42(a)(2) ("If actions before the court involve a common question of law or fact,

6 the court may: . . . consolidate the actions").  Although the case first filed in this District was *Real*

7 *Action Paintball, Inc. v. Advanced Tactical Ordnance Systems, LLC et al.*, Case No. 14-2435-MEJ

8 (N.D. Cal.) (the "ATO Case"), the Court will consolidate the actions under *United Tactical*

9 *Systems, LLC v. Real Action Paintball, Inc. et al.*, Case No. 14-4050-MEJ (N.D. Cal.) (the "UTS

10 Case").  The UTS Case effectively represents the earliest filed action as UTS advances the

11 interests of Advanced Tactical Ordnance Systems, LLC ("ATO"), which filed the first action

12 pertaining to the issues arising in these cases: *Advanced Tactical Ordnance Systems, LLC v. Real*

13 *Action Paintball, Inc., et al.*, Case No. 12-00296-JVB-RBC (N.D. Ind.) (the "Indiana Action").

14 The above captioned cases are thus **CONSOLIDATED** for pretrial proceedings before this Court.

15    The consolidated case will continue to be referred to as *United Tactical Systems, LLC v.*

16 *Real Action Paintball, Inc.*, Case No. 14-4050-MEJ (N.D. Cal.).  All documents shall be filed in

17 Case No. 14-4050.  Additionally, in light of this consolidation, the Court **DENIES** Real Action's

18 Motion to Amend its Complaint, and **DENIES WITHOUT PREJUDICE** the remaining pending

19 Motions to Dismiss and Motions to Strike.[2]  That said, the Court will grant all parties leave to

20 amend their pleadings should they choose to do so.  UTS will have until May 27, 2015 to file any

21 amended complaint, and Real Action will have until June 17, 2015 to file any amended

22 counterclaims.  Any motions pursuant to Rule 12 shall be filed by July 9, 2015.  Additionally, the

23 Court welcomes the parties to agree to a more expedited schedule and will consider such a

24 stipulation if they are able to agree to an alternative timetable.

25    The Court now turns to the substance of the Motions to Dismiss for Lack of Personal

26 Jurisdiction and Venue.

27 ---

28 [2] These Motions include the following: ATO Dkt. No. 49 (Motion to Dismiss); ATO Dkt. No. 50 (Motion to Strike); UTS Dkt. No. 93 (Motion to Strike Counterclaim); and UTS Dkt. No. 101 (Motion to Dismiss Counterclaim).

United States District Court
Northern District of California

**BACKGROUND**

UTS and Real Action sell irritant filled projectiles.  Real Action's Compl. ("RAP Compl.") ¶ 13, ATO Dkt. No. 1; UTS Compl. ¶ 2, UTS Dkt. No. 1.  Typically used by law enforcement or military, these projectiles are non-lethal capsules that contain a pepper substance and can be shot like paintballs.  RAP Compl. ¶ 12.  UTS's predecessor in interest, ATO, an Indiana corporation, previously brought suit against Real Action,[3] a California Company, in the Indiana Action, alleging that Real Action infringed on its "PepperBall" trademark by making statements implying that Real Action sold PepperBall projectiles, among other things.  RAP Compl. ¶¶ 18-19; UTS Compl. ¶ 36.  ATO obtained a temporary restraining order and later a preliminary injunction to stop Real Action's use of the PepperBall mark and related acts by Real Action.  RAP Compl. ¶ 24; UTS Compl. ¶ 36.

ATO also sued Conrad Sun, Sun LLC, and Apon in the Indiana Action.  RAP Compl. ¶¶ 68-69.  Apon manufactured irritant projectiles, while Conrad Sun and his company Sun LLC had previously helped broker a deal for the sale of irritant filled projectiles from Apon to Real Action.  UTS Compl. ¶ 11, RAP Compl. ¶ 16.  ATO settled with these defendants in the Indiana Action, based on terms discussed more thoroughly within this Order.  RAP Compl. ¶ 29.  Specifically, Real Action alleges that Sun, Sun LLC, and Apon settled the Indiana Action "on abusive terms," which made it so that Real Action was unable to acquire the irritant projectiles contracted for from Sun LLC and Apon, and consequently harmed Real Action's position in the market place.  *Id.* ¶ 72.  Meanwhile, Real Action challenged the Northern District of Indiana's jurisdiction, arguing that Indiana did not have personal jurisdiction over it.  The Court of Appeals for the Seventh Circuit agreed, and the suit was dismissed.  *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014).

Real Action then filed suit in this Court (the ATO Case).  It asserts 17 claims against ATO, including claims for wrongful injunction, declaratory relief, unfair competition, and restraint of trade.  Real Action also sues attorneys Michael Blumenthal and David Piell, who represented

[3] When referring to Real Action, the Court also generally refers to its co-Plaintiff and co-Defendant, K.T. Tran.

3

ATO in the Indiana Action.  RAP Compl. ¶ 18; Piell Decl. ¶ 5, ATO Dkt. No. 42, UTS Dkt. No. 98.  Blumenthal and Piell are both residents of Illinois and have offices in Illinois.  Blumenthal Decl. ¶ 3, ATO Dkt. No. 41, UTS Dkt. No. 99; Piell Decl. ¶ 3.  Real Action alleges claims against these attorneys for malicious prosecution, abuse of process, and conspiracy, among other things.

Additionally, Real Action sues Gary Gibson and Perfect Circle Projectiles LLC.  Perfect Circle is an Illinois limited liability company with its principal place of business in Lake Forest, Illinois.  RAP Compl. ¶ 3; ATO Dkt. No. 13 (Gibson and Perfect Circle's Motion, "PC & Gibson Mot.") at 2, 5, ATO Dkt. No. 13; Gibson Decl. ¶ 3, ATO Dkt. No. 15.  It owns 50% of ATO and once supplied irritant projectiles to Pepperball Technologies, Inc., a California company that ATO purportedly acquired in 2012.  Gibson Decl. ¶ 10; Gibson Dep. at 63:13-16, ATO Dkt. No. 159-16.  In turn, Gibson owns Perfect Circle.  Gibson Dep. at 63:5-9.  Gibson likewise is a resident of Illinois who lives in Riverwoods, Illinois.  RAP Compl. ¶ 4; Gibson Decl. ¶ 2.  Gibson is not personally a shareholder in ATO.  Gibson Decl. ¶ 10.  Real Action brings numerous claims against Perfect Circle, including claims for monopoly and restraint of trade under the Sherman Act, combination in restraint of trade under California's Cartwright Act, unfair competition under California Business and Professions Code §§ 17200 and 17500, and conspiracy.  Real Action asserts claims against Gary Gibson for intentional interference with contractual relations, intentional or negligent interference with prospective economic advantage, and conspiracy, among other claims.

After Real Action originally filed suit in this Court, UTS was formed and purchased ATO and the PepperBall mark.  UTS Compl. ¶ 2.  UTS then filed a lawsuit against Real Action in this Court (the UTS Case) and moved for an *ex parte* temporary restraining order.  UTS Dkt. No. 27.  The Court denied that motion but construed it as a motion for a preliminary injunction.  UTS Dkt. No. 34.  The Court ultimately granted in part and denied in part UTS's motion for a preliminary injunction, which, among other things, enjoined Real Action from using the PepperBall name to refer to its irritant projectiles.  UTS Dkt. No. 85 at 41.  Real Action subsequently counter-sued UTS for various claims (many of which are similar to those asserted against ATO) as well as Blumenthal and Piell for misappropriation of trade secrets related to information published with

4

United States District Court
Northern District of California

1   the filing of UTS's motion for a temporary restraining order.  UTS Dkt. No. 51.  Real Action

2   served both attorneys in California while they attended UTS's preliminary injunction hearing.

3   UTS Dkt. No. 73 (Blumenthal served in San Francisco, California) & UTS Dkt. No. 74 (Piell

4   served in San Francisco, California).

5          The Moving Parties filed their motions challenging the Court's personal jurisdiction over

6   them several months ago.  ATO Dkt. No. 13, PC & Gibson Mot.; ATO Dkt. No. 39 (Blumenthal

7   and Piell's Motion, "ATO B&P Mot."); UTS Dkt. No. 96 (Blumenthal and Piell's Motion, "UTS

8   B&P Mot.").  During that time, the Court has permitted Real Action the opportunity to conduct

9   targeted discovery on the jurisdictional issue.  ATO Dkt. No. 80.  The Court also invited the

10  parties' input on whether to consolidate these actions.  ATO Dkt. No. 126; UTS Dkt. No. 87.  The

11  Court consolidated the personal jurisdiction motions on January 7, 2015 and set a schedule for

12  Real Action's Opposition and the Moving Parties' Reply.  ATO Dkt. No. 130; UTS Dkt. No. 117;

13  *see also* Modified Order, ATO Dkt. No. 138; UTS Dkt. No. 127.  At a subsequent case

14  management hearing, the parties agreed to keep the actions separated pending the Court's order on

15  the personal jurisdiction motions.  *See* ATO Dkt. Nos. 135-36; 137; UTS Dkt. Nos. 125-27.

16  Following numerous discovery disputes, Real Action has now filed its Opposition (ATO Dkt. No.

17  159; UTS Dkt. No. 131), and the Moving Parties have filed their Reply[4] (ATO Dkt. No. 163).  The

18  Moving Parties contend that the Court does not have personal jurisdiction over them; alternatively,

19  they argue that venue is not proper in this District and that the claims against them should be

20  dismissed or transferred.  The Court has considered each of these challenges below, starting first

21  with the matter of personal jurisdiction, and following with the Moving Parties' venue challenge.

22                    **LEGAL STANDARD – PERSONAL JURISDICTION**

23         The plaintiff bears the burden of proving that the court may exercise personal jurisdiction

24  over a defendant when the defendant moves to dismiss under Federal Rule of Civil Procedure

25  12(b)(2).  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[U]ncontroverted

26  allegations in the complaint must be taken as true," and conflicts between facts contained within

27

28  ───────────────
    [4] Blumenthal and Piell did not file their Reply in the UTS Case; this appears to be a mere filing
    error.  The Court will consider their arguments as set forth in the Reply filed in the ATO Case.

1   the declarations or affidavits submitted by the parties are resolved in the plaintiff's favor.

2   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see, e.g.*, *Mattel,*

3   *Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861-62 (9th Cir. 2003).

4          Courts properly exercise personal jurisdiction over a defendant "if it is permitted by a

5   long-arm statute and if the exercise of jurisdiction does not violate federal due process." *Pebble*

6   *Beach Co.*, 453 F.3d at 1154.  Where there is no applicable federal statute governing personal

7   jurisdiction, courts apply the law of the state in which the court sits. Fed. R. Civ. P. 4(k)(1)(A);

8   *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  In California, a court

9   "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the

10  United States." Cal. Civ. Proc. Code § 410.10; *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct.

11  746, 753 (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the

12  full extent permissible under the U.S. Constitution.").  As such, "the jurisdictional analyses under

13  state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 801.

14         The Fourteenth Amendment Due Process Clause requires that an out-of-state defendant

15  have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not

16  offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326

17  U.S. 310, 316 (1945) (quotation omitted).  "In judging minimum contacts, a court properly focuses

18  on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465

19  U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  Courts distinguish

20  between general and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

21  U.S. 408, 414 (1984).

22                          **DISCUSSION – PERSONAL JURISDICTION**

23  **A.      Jurisdiction over Michael Blumenthal and David Piell**

24         Real Action served Blumenthal and Piell with process in the UTS Case while they were

25  physically present in California.  *See* UTS Dkt. Nos. 73-74 (proofs of service).  Real Action

26  contends that this establishes personal jurisdiction over them in California.

27         Personal jurisdiction protections are rooted in due process concerns.  *See Burnham v.*

28  *Superior Court of Cal.*, 495 U.S. 604, 609 (1990) (Scalia, J., plurality op.).  But in considering due

United States District Court
Northern District of California

process concerns, the United States Supreme Court in *Burnham* held that "the Due Process Clause does not prohibit the California courts from exercising jurisdiction over petitioner based on the fact of in-state service of process." *Id*. at 628.  The defendant in *Burnham* was a New Jersey resident personally served with a divorce petition while visiting his children in California.  *Id.* at 608.  Although no part of the divorce proceedings arose out of the defendant's California contacts, the Court nevertheless held that California's courts could exercise general personal jurisdiction over the defendant.  *Id.*  The Court reaffirmed the long-standing rule that "personal service upon a physically present defendant suffice[s] to confer jurisdiction, without regard to whether the defendant was only briefly in the State or whether the cause of action was related to his activities there." *Id.* at 612.  This kind of jurisdiction is referred to as "tag jurisdiction." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1067 (9th Cir. 2014); *see also Bourassa v. Desrochers*, 938 F.2d 1056, 1058 (9th Cir. 1991) (referring to "[j]urisdiction obtained through service of a person temporarily in a forum and engaged in activity unrelated to the litigation" as "transient jurisdiction.").  Since *Burnham*, the Ninth Circuit has recognized that "[i]n-state personal service . . . serves as a basis for personal jurisdiction." *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 819 (9th Cir. 2011); *see Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("Personal jurisdiction over a defendant may be acquired in one of two ways: by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction.").

While jurisdiction based on in-state service of process is well-established, the matter here involves a number of unique variables.  The first of those variables is the reason for Blumenthal and Piell's presence in California.  Blumenthal was present in California while representing his client, UTS, at the hearing on its preliminary injunction motion.  Opp'n at 10; Reply at 4.  While Piell has not appeared as a named attorney in either the UTS or ATO Case, he was at any rate previously an attorney for ATO in the Indiana Action and attended the preliminary injunction hearing in the UTS case.  Opp'n at 10, 13; Reply at 4; *see* UTS Dkt. Nos. 72-74.  Blumenthal and Piell maintain that their presence in California would not have been necessary but for Real Action initiating the current litigation and contend that "[w]here a plaintiff uses fraud or deceit to serve a plaintiff in a given forum, the in-forum service is ineffective to establish jurisdiction over the

1  defendant."  Reply at 4 (quoting *Voice Sys. Mktg. Co., L.P. v. Appropriate Tech. Corp.*, 153

2  F.R.D. 117, 119 (E.D. Mich. 1994)).  They contend "Real Action essentially used the November

3  hearing to surprise [them] with summonses in the UTS action."  *Id.*

4        Although Blumenthal and Piell may have been surprised by the summonses, these

5  attorneys were aware that Real Action filed counterclaims against them in the UTS Case prior to

6  the hearing on the preliminary injunction.  UTS Counterclaim, UTS Dkt. No. 51; Hr'g Tr. at

7  80:15-16, UTS Dkt. No. 84.  Additionally, their argument that Real Action fraudulently induced

8  them to attend the hearing is unsupported.  The November hearing was in consideration of UTS's

9  preliminary injunction motion, and there is no evidence that Real Action used "fraud" or "deceit"

10  to draw these attorneys to California.  This case is thus distinguishable from *Voice Systems*

11  *Marketing*, where—according to Blumenthal and Piell—"plaintiff induced defendant to attend a

12  business meeting in the forum, but the meeting was merely a pretext to serve the defendant."

13  Reply at 4 (citing *Voice Sys. Mktg.*, 153 F.R.D. at 119).  UTS's preliminary injunction hearing was

14  not a pretext for Real Action to serve Blumenthal and Piell; Real Action only took advantage of

15  the situation presented.  As in *Burnham*, the fact that these attorneys did not purposefully avail

16  themselves of California's laws and protections does not necessarily mean they are protected from

17  litigation here if tag or transient jurisdiction is established.  *See Burnham*, 495 U.S. at 619

18  (reaffirming transient jurisdiction as "[a]mong the most firmly established principles of personal

19  jurisdiction in American tradition")[5]; *Martinez*, 764 F.3d at 1067.

20        The second variable is that Real Action only served these attorneys in California in the

21  UTS Case, not the ATO Case.  In the ATO Case, Real Action served Piell in Buffalo Grove,

22  Illinois, and Blumenthal agreed to service through his attorney, John Kirke.  ATO Dkt. Nos. 21,

23  30.  Two issues arise from this situation: first, whether the attorneys are subject to transient

24  jurisdiction while representing their client in the forum state; and second, whether the fact that the

25  attorneys were served in one case makes them subject to jurisdiction in the related case.

26  _____

27  [5] "The short of the matter is that jurisdiction based on physical presence alone constitutes due
process because it is one of the continuing traditions of our legal system that define the due
process standard of 'traditional notions of fair play and substantial justice.'  That standard was

28  developed by *analogy* to 'physical presence,' and it would be perverse to say it could now be
turned against that touchstone of jurisdiction."  *Burnham*, 495 U.S. at 619.

United States District Court
Northern District of California

1          In *Lamb v. Schmitt*, the Supreme Court considered the situation where counsel for a party

2   in a pending action was served with process in an action related to the principal action.  285 U.S.

3   222 (1932).  The Court first noted "[t]he general rule [is] that witnesses, suitors, and their

4   attorneys, while in attendance in connection with the conduct of one suit, are immune from service

5   of process in another[.]"  *Id.* at 225; *see also Stewart v. Ramsay*, 242 U.S. 128, 129 (1916)

6   ("[S]uitors, . . . coming from another jurisdiction, are exempt from service of civil process during

7   the period required for their attendance in court and for a reasonable period of time in coming and

8   going.").  This "privilege," however, "is the privilege of the court, rather than of the defendant.  It

9   is founded in the necessities of the judicial administration, which would be often embarrassed, and

10  sometimes interrupted, if the suitor might be vexed with process while attending upon the court

11  for the protection of his rights, or the witness while attending to testify."  *Lamb*, 285 U.S. at 225

12  (citation omitted).

13         The Court then considered the question of "[w]hether, despite any effect of the immunity

14  in encouraging voluntary attendance at the trial, it should be withheld from one who, while in

15  attendance, is served with process commanding his continued presence and aid to facilitate the

16  pending litigation, and to carry it to its final conclusion?"  *Id.* at 226.  The test applied by the

17  Court was "whether the immunity itself, if allowed, would so obstruct judicial administration in

18  the very cause for the protection of which it is invoked as to justify withholding it."  *Id.* at 228.

19  The Court concluded that where the two proceedings are related, the intrusion of service of

20  process in the second suit does not obstruct the principal proceeding and immunity is not

21  necessary for the convenience of the courts.  *Id.*; *see also* 4 Charles Alan Wright and Arthur R.

22  Miller, Federal Practice and Procedure § 1080 at 511 ("There is generally no immunity from

23  service of process when the suit in which immunity is sought is part of, or a continuation of, the

24  suit for which the person claiming immunity is in the jurisdiction.").

25         Since the Supreme Court's decision in *Lamb*, "the extension of the privilege has been

26  limited by the majority of courts to cases in which the party or witness was participating in an

27  *unrelated* litigation at the time that he was served with process in the forum state."  *N. Light Tech.,*

28  *Inc. v. N. Lights Club*, 236 F.3d 57, 62 (1st Cir. 2001) (collecting cases; emphasis in original),

United States District Court
Northern District of California

9

1    *cert. denied*, 533 U.S. 911 (2001).  As the First Circuit Court of Appeals explained:

2

3              The rationale for the differing-lawsuit prerequisite to process
               immunity in this context is relatively straightforward: while a court
4              can, in cases before it, choose to protect the jurisdictional status of a
               party or witness who is reluctant to come to the forum state by
5              issuing protective orders or subpoenas, it cannot wield such power
               in other cases.  The process-immunity exception therefore fills the
6              gap only where it needs to be filled that is, in cases where a district
               court wishes to shield an individual from service of process to
7              encourage his or her travel to the forum state, but would be unable
               to do so absent the power to grant immunity.

8    *Id.* at 63.

9         In *Northern Lights*, the First Circuit found the defendant was not entitled to process

10   immunity when he entered the forum to attend a personal jurisdiction and preliminary injunction

11   hearing.  *Id.*  The court refused to adopt "a broad, *per se* rule precluding the exercise of personal

12   jurisdiction whenever the served individual is in the jurisdiction to attend litigation-related

13   proceedings that pertain to him or her."  *Id.*  The court instead considered the circumstances and

14   found particularly important the fact the defendant never asked the district court for such

15   immunity, either prior to or following the hearing which had prompted the defendant's presence in

16   the forum.  *Id.* at 63.  In addition, the court noted the defendant had entered the forum voluntarily

17   to attend the hearing as a spectator and to make himself available as a witness in the same case in

18   which he was served with process, not an unrelated litigation.  *Id.*  The First Circuit noted that

19   these sorts of voluntary circumstances "are not those that would ordinarily favor a finding of

20   immunity even in a case where it had been timely requested."  *Id.*; *see also St. Jude Med. S.C., Inc.*

21   *v. Janssen-Counotte*, 2014 WL 7237411, at *11 (W.D. Tex. Dec. 17, 2014) (finding no immunity

22   where a litigant voluntarily choose to go to Texas to attend a hearing in the same litigation for

23   which she was served, and noting that the Court did not order her to appear and that she could

24   have earlier requested immunity or waived service).

25        The Ninth Circuit has not yet considered whether an attorney is subject to personal

26   jurisdiction in a state where the attorney has been served while attending a hearing in which they

27   are representing clients.  *But see Moylan v. AMF Overseas Corp., S.A.*, 354 F.2d 825, 829 (9th Cir.

28   1965) (finding defendant exempt from service where he went to Guam for the sole purpose of

10

testifying in the action on behalf of his employer).  Other courts, however, have held that there is no immunity if the service is made in a case related to the one in which the attorney is making an appearance.  *See United States v. Shibley*, 112 F. Supp. 734, 751 (S.D. Cal. 1953) ("[A]ssuming that the defendant was, at the time, of the service of the subpoena, acting as counsel for Bennette, and was on the military premises for that purpose, he was not immune from service, because the inquiry was so closely related to the Bennette court-martial conviction as to bring the principles declared in the case just cited into full play."); *LaCroix v. Am. Horse Show Ass'n*, 853 F. Supp. 992, 994 (N.D. Ohio 1994) (jurisdiction established over attorney defendant where "service was made in the case in which the attorney was making an appearance."); *Ferguson v. Ford Motor Co.*, 92 F. Supp. 868, 870-71 (S.D.N.Y. 1950) (attorney attending the taking of a deposition was not immune from service of process in the same action); *see also Lifelast, Inc. v. Coldwater Grp., Inc.*, 2005 WL 2454191, at *4 (W.D. Wash. Oct. 4, 2005) ("Because he was served in the same case as the one in which he was giving a deposition, service immunity does not apply[.]"); *U. S. Nat'l Bank of Or. v. Great Republic Life Ins. Co.*, 54 F.R.D. 498, 499 (D. Or. 1971) (no immunity where corporation's president served after testifying at hearing in Oregon; "[i]mmunity in this case would serve the purpose of forum shopping, but that is not a sufficient basis for defeating the service of process[.]").

In this case, there are several considerations that lead the Court to conclude that immunity is not warranted.  First, these Defendants have not requested such immunity—in this motion or otherwise.  Nowhere in their briefing or in all their appearances before this Court have they indicated that they seek immunity.  Nor did they request immunity prior to attending the hearing on their client's Motion.  Second—and somewhat compounded by the first consideration—is the fact that these Defendants are attorneys with knowledge of the potential jurisdictional issues that arise when entering another jurisdiction.  While they suggest that they should be in some way protected by their status as attorneys representing a client in this matter, they fail to acknowledge the longstanding precedent of *Lamb*, which establishes that attorneys are not always protected in such situations.  Third, both of these Defendants voluntarily entered the forum, despite having California counsel and without asking the Court for some advanced immunity from process.

1    Finally, Federal Rule of Civil Procedure 4(d) permits a defendant to waive jurisdiction, with no

2    impact on later objecting to personal jurisdiction or to venue.  *See* Fed. R. Civ. P. 4(d).  These

3    Defendants did not waive service before attending the hearing; nothing prevented them from doing

4    so.  Given the foregoing, the Court cannot find immunity is warranted and finds that Blumenthal

5    and Piell are subject to personal jurisdiction based on transient jurisdiction in the UTS Case.

6        As to the ATO case, given that the Court has consolidated that case with the UTS Case,

7    personal service in the UTS Case also establishes jurisdiction over these defendants in the newly

8    consolidated case.  Even after Blumenthal and Piell were served in California, UTS argued that the

9    cases should be consolidated under the UTS case number, *see* UTS Dkt. No. 111 at 2, and there is

10   no indication that Blumenthal or Piell objected to consolidating the cases under the UTS case

11   number.  Furthermore, even if the Court had not consolidated these actions, the Court would have

12   found personal jurisdiction established.  First, at base, personal jurisdiction rests on due process

13   concerns, and the practicalities of the relationship between these two cases significantly reduces

14   these concerns.  Among other things, both attorneys would have already been here in the UTS

15   Case, which the Court kept on the same schedule, and otherwise intended to keep on the same

16   schedule, as the ATO Case.  Practically, the relationship between the two cases and the overlap of

17   claims asserted and sought to be asserted against these attorneys would have supported jurisdiction

18   in the ATO case through the California service of process.  Additionally, as discussed below, these

19   attorneys' own actions in and directed at California would likely lead the Court to conclude

20   specific jurisdiction is established over them.  In sum, the Court finds it has personal jurisdiction

21   over Blumenthal and Piell in the consolidated case.

22   **B.      Jurisdiction over Perfect Circle & Gary Gibson**

23       Neither Perfect Circle nor Gary Gibson was served in California, and therefore the issue is

24   whether the Court has personal jurisdiction over these Defendants by some other means.  Real

25   Action asserts two primary arguments.

26       1.      Real Action's Jurisdictional Arguments

27       First, Real Action argues that personal jurisdiction over Gibson and Perfect Circle is

28   proper because "ATO's conduct may be ascribed to [Perfect Circle] and Gibson."  Opp'n at 14.

United States District Court
Northern District of California

ATO has not challenged personal jurisdiction.  Real Action contends that, as ATO has "engaged in extensive conduct in California, and even had an office in California," ATO's conduct may be attributed to both Gibson and Perfect Circle.  Opp'n at 14.

Second, Real Action contends that "[o]ne critical activity" of Perfect Circle and Gibson subjects them to jurisdiction in California.  *Id.*  That one critical activity is related to a settlement agreement between ATO and Conrad Sun and Sun LLC in the Indiana Action.  Specifically, Real Action alleges that Gary Gibson, on behalf of Perfect Circle, signed a guaranty, in which Perfect Circle agreed to guarantee terms of the settlement agreement to effectuate that agreement in the Indiana Action.  Opp'n at 14-15; *see* Guaranty, Dkt. No. 159-5; Settlement, Dkt. No. 159-4.  In particular, the settlement agreement required ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  Settlement ¶¶ 1-2.  ███████████ ██████████████████████████████████████████.  *Id.* ¶ 2.  The settlement agreement also required ████████████████████████████████████████████████████ ███████████████████████████.  *Id.* ¶ 3.  ██████████████████████████████ ████████████████████████████████████████████████████████████ ███████.  Guaranty at 1.  Gibson, as a "managing member," signed the agreement on behalf of Perfect Circle.  *Id.* at 4.  Real Action contends that these acts and transactions targeted at California subject both Gibson and Perfect Circle to jurisdiction in California.

Because, as discussed below, the Court finds it has specific jurisdiction over Perfect Circle and Gibson based on Perfect Circle's guaranty of the settlement agreement and Gary Gibson's actions in securing that guaranty, the Court does not address Real Action's first argument.

2.      Specific Jurisdiction over Gibson & Perfect Circle

"Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).  "Under specific jurisdiction, a

court may assert jurisdiction for a cause of action that arises out of the defendant's forum-related activities." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993), *as amended* (Mar. 24, 1993). The Ninth Circuit employs a three-part test to determine whether a defendant has sufficient contacts with the forum state such that the forum may exercise specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff satisfies the first two parts of the test, the burden shifts to the defendant to "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). While all three requirements must be met, in considering the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other." *Yahoo!*, 433 F.3d at 1210.

"The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). "When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.'" *Id.* at 1211 (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)). The plaintiff must prove that the defendant either purposefully availed himself of the privilege of conducting activities in California or purposefully directed his activities toward California under the first prong of the specific jurisdiction test. *Schwarzenegger*, 374 F.3d at 802. Courts apply a purposeful direction analysis in suits sounding in tort, whereas a purposeful availment analysis is used in suits sounding in contract. *Yahoo!*, 433 F.3d at 1206.

Real Action made no effort to establish that jurisdiction is proper for each claim asserted

14

against Perfect Circle or Gibson, instead relying on allegations about how their actions were generally directed at California entities.  Nonetheless, in a case such as this where all of Real Action's claims arise out of a common nucleus of operative facts, if personal jurisdiction exists on one claim, the Court may exercise jurisdiction over all the other claims.  *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012); *Picot*, 780 F.3d at 1211 ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." (citing *Action Embroidery*, 368 F.3d at 1181)).

<blockquote>a. Claims against Perfect Circle & Gibson sound in tort</blockquote>

Real Action alleges five claims against Perfect Circle: (1) monopoly and restraint of trade under the Sherman Act, 15 U.S.C. §§ 1 and 2; (2) combination in restraint of trade under California's Cartwright Act; (3) unfair competition and false advertising under California Business & Professions Code sections 17200 and 17500; (4) unjust enrichment under Indiana law; and (5) conspiracy under Indiana and California laws.  *See* RAP Compl. ¶¶ 100-19; 128-39.  Several of Real Action's claims against Perfect Circle, including its allegations of monopoly, restraint of trade, and unfair competition, generally sound in tort, and thus the Court applies the purposeful direction test.  *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 743-44 (9th Cir. 2013) (applying the purposeful direction test where pleadings alleged defendants engaged in "'intentional acts' in the form of anticompetitive behavior" including price manipulation through agreements to control market prices), *aff'd on other ground sub nom. Oneok, Inc. v. Learjet, Inc.*, __ S. Ct.__, 2015 WL 1780926 (Apr. 15, 2015); *Maxim Integrated Prods., Inc. v. Analog Devices, Inc.*, 79 F.3d 1153 (9th Cir. 1996) (unpublished opinion; "In order to prove the tort of attempted monopolization under § 2 of the Sherman Act, the plaintiff must show (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." (citing 15 U.S.C. § 2; *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993)); *see also Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (California Business & Professions Code section 17200 is a "tort [that] encompasses practices which offend established public policy or that are immoral,

1    unethical, oppressive, unscrupulous or substantially injurious to consumers.").

2           Likewise, Real Action asserts a claim against Gary Gibson for intentional interference with

3    contractual relations, based in part on Real Action's contention that the Settlement with Sun and

4    Sun LLC was conditioned on the Guaranty, which Gibson, in his capacity as a "managing

5    member," signed on Perfect Circle's behalf.  Opp'n at 14.  Because of this action, Real Action

6    argues that Gibson intentionally interfered with contractual relations in California and thus is

7    subjected to jurisdiction in California.  *Id.*  As with the claims against Perfect Circle, the Court

8    applies the purposeful direction test when analyzing personal jurisdiction over a claim of

9    intentional interference with contractual relations.  *See Picot*, 780 F.3d at 1213-14 (applying

10   purposeful direction test to allegations based on tortious inference of contract).

                     b.      *Purposeful direction*

12          Courts evaluate purposeful direction for tort-related conduct under the three-part "effects"

13   test set forth in *Calder v. Jones*, 465 U.S. 783 (1984); *see Schwarzenegger*, 374 F.3d at 803.

14   "*Calder* stands for the proposition that purposeful availment is satisfied even by a defendant

15   whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having

16   effect in the forum state."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (quotation

17   omitted).  As such, "the 'effects' test requires that the defendant allegedly have (1) committed an

18   intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

19   is likely to be suffered in the forum state."  *Id.*

20          As to the first prong of the test, the Court finds that Perfect Circle committed an intentional

21   act by entering into the guaranty.  *See* Guaranty.  Real Action argues that by signing the guaranty,

22   Perfect Circle interfered with the contract between Sun LLC and Real Action and caused Sun LLC

23   to restrain trade with Real Action.  Opp'n at 15.  Real Action contends that Perfect Circle's actions

24   were directed at California, as Sun, Sun LLC, and Real Action are located in California.  *Id.*

25   Additionally, the settlement agreement provides that Perfect Circle guarantee financial

26   transactions aimed at California.  Settlement ¶ 3.

27          Likewise, by signing the guaranty, the Court finds that Gibson committed an intentional

28   act.  While Gibson signed the guaranty in his official capacity as a "managing member" of Perfect

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    Circle, he cannot avoid jurisdiction merely because of his status as an employee or officer.  *See*

2    *Calder*, 465 U.S. at 790 (defendant's "status as employee[] does not somehow insulate [him] from

3    jurisdiction.").  Corporate officers may be held personally liable for their actions when they are the

4    "guiding spirit" behind the allegedly tortious conduct.  *Davis v. Metro Prods., Inc.*, 885 F.2d 515,

5    524 n.10 (9th Cir. 1989); *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir.

6    1996) ("[A] corporate officer or director is, in general, personally liable for all torts which he

7    authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the

8    corporation and not on his own behalf." (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*,

9    768 F.2d 1001, 1021 (9th Cir. 1985)).  Real Action contends that by signing the guaranty, Gibson

10   participated in the commission of the tort of intentional interference with contractual relations

11   because the guaranty effectuated the settlement agreement, which impacted both Real Action, Sun

12   and Sun LLC.  Opp'n at 15; *see* ATO Compl. ¶ 68.  In light of the foregoing, the Court finds that

13   the first prong of the *Calder* effects test is satisfied against both Perfect Circle and Gary Gibson.

14       With regard to the second prong, the Court finds that Perfect Circle expressly aimed its

15   intentional act at California because Perfect Circle targeted Sun, Sun LLC, and Real Action, all of

16   which are located in California.  Opp'n at 15; *see* Guaranty at 1.  Perfect Circle entered into a

17   Guaranty Agreement with Sun LLC, a California corporation.  Opp'n at 14; *see* Guaranty.  The

18   settlement agreement also requires financial transactions within California.  Opp'n at 14;

19   Settlement ¶¶ 1-3.  Furthermore, the settlement agreement provided that ██████████████████

20   █████████████████████████████████████████████████████████████████████

21   Settlement ¶ 2.  Such action may impact California's market for irritant projectiles as well as Real

22   Action's business.  *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392,

23   1398 (9th Cir. 1986) (personal jurisdiction established where "the effect [of a contract] in

24   California was not only foreseeable, it was contemplated and bargained for.").

25       Likewise, as Real Action has alleged that Gibson intentionally interfered with a contract by

26   signing the Guaranty, the Court finds that Gibson "expressly aimed such interference at

27   California."  *Picot*, 780 F.3d at 1214.  The Ninth Circuit recently examined a similar personal

28   jurisdiction issue regarding a claim of intentional interference with a contract in *Picot v. Westin*.

1   In *Picot*, the defendant's allegedly tortious conduct involved making statements to an Ohio

2   resident that caused a Delaware corporation to cease making payments into trusts located in

3   Wyoming and Australia.  *Id.* at 1215.  The defendant never entered California or reached out to a

4   California resident in the course of his conduct.  *Id.*  As such, the Ninth Circuit held that the

5   defendant's actions did not sufficiently connect him to California to support the exercise of

6   personal jurisdiction over him.  *Id.*

7          This case is different.  Gibson's intentional act of signing the guaranty was expressly

8   aimed at California.  Specifically, Real Action alleges that the guaranty led to the execution of the

9   settlement agreement between ATO and Sun LLC, a California corporation, involving financial

10  transactions within California.  *See* Guaranty at 1; Settlement ¶ 3.  The settlement also impacted

11  Sun's business in California, as noted above.  *Id.* ¶ 2.  This agreement thus affected business

12  between Sun LLC and Real Action, another California corporation and altered their contractual

13  arrangement.  While the Supreme Court has made it clear that "a defendant's relationship with a

14  plaintiff or third party, standing alone, is an insufficient basis for jurisdiction[,]" *Walden v. Fiore*,

15  134 S. Ct. 1115, 1123 (2014), in this case, Gibson's actions created contacts beyond his

16  relationships with Real Action and Sun LLC.  By signing the guaranty and ████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████, including in the California market.

19  Accordingly, the Court finds the express aiming requirement is satisfied.

20         The third prong of the effects test requires the plaintiff to show that "a jurisdictionally

21  sufficient amount of harm is suffered in the forum state."  *Yahoo!*, 433 F.3d at 1207.  "A

22  corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of

23  business."  *CollegeSource*, 653 F.3d at 1079.  Real Action alleges that by signing the Guaranty,

24  Perfect Circle and Gibson "effectuated the interference with the Sun-Real Action contract[,]"

25  causing it harm in California.  Opp'n at 15.  Because of that agreement, Real Action contends it

26  was unable to supply irritant projectiles to its customers and lost profits as a result.  RAP Compl.

27  ¶¶ 72-73.  As Real Action is a California corporation, such a loss is a sufficient injury to satisfy

28  the third prong of the effects test.  *See Dole Food*, 303 F.3d at 1114 ("[W]hen a forum in which a

1    plaintiff corporation has its principal place of business is in the same forum toward which

2    defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal

3    jurisdiction.").

4         Accordingly, the tort claims related to restraint of trade and unfair competition satisfy the

5    "purposeful direction" part of the test.  "When a defendant must appear in a forum to defend

6    against one claim, it is often reasonable to compel that defendant to answer other claims in the

7    same suit arising out of a common nucleus of operative facts." *Action Embroidery*, 368 F.3d at

8    1181.  All of Real Action's claims against Gibson and Perfect Circle are based on common factual

9    predicates, namely these Defendants' alleged involvement in using various litigation related

10   mechanisms to oust Real Action from the irritant projectile market.  The Court therefore exercises

11   its discretion to find pendent jurisdiction over the remaining claims. *See Picot*, 780 F.3d at 1211.

12              *c.    Defendant's forum-related activities*

13        After purposeful direction, the second requirement for specific jurisdiction is that the claim

14   "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at

15   802.  This prong is satisfied if the plaintiff would not have been injured "but for" the defendant's

16   conduct directed toward the forum state. *See Panavision Int'l*, 141 F.3d at 1322 (considering

17   whether plaintiff would have been injured but for defendant's conduct directed toward plaintiff in

18   California); *Mattel*, 354 F.3d at 864 (asking but for defendant's contacts with California, would

19   plaintiff's claims against defendant have arisen).  Here, without the guaranty executed by Perfect

20   Circle and signed by Gary Gibson, it is plausible that Real Action would not have been injured

21   because the settlement agreement may not have been possible without that guaranty.  Real Action

22   presented evidence that the guaranty secured the execution of the settlement agreement, which had

23   the effect of injuring Real Action in California, as Real Action contends that its business was

24   harmed as a result of this settlement. *See* RAP Compl. ¶¶ 70, 72-73, 79.  As such, Real Action's

25   claim arises out of Perfect Circle and Gibson's California-related activities.  The second element

26   of the specific jurisdiction test is met.

27              *d.    Reasonableness*

28        Because Real Action satisfies the first two parts of the test, the burden shifts to Gibson and

United States District Court
Northern District of California

Perfect Circle to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource*, 653 F.3d at 1076 (quoting *Burger King*, 471 U.S. at 477).  Courts consider seven factors, none of which is dispositive:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food*, 303 F.3d at 1114.

Gibson and Perfect Circle focus on the first, second, fifth, and seventh factors.  First, they argue that the extent of interjection into the forum state is a factor distinct from the purposeful availment test.  PC & Gibson Mot. at 10.  They contend that even if their contacts show purposeful availment, they maintain no presence in California and any prior contact they had with this forum is unrelated to the action and too attenuated to show purposeful interjection.  *Id.* at 10-11.  They also argue that it would be unduly burdensome to defend this suit in California when they reside in Illinois.  *Id.* at 11.  They cite the inconvenience and expense of travel, as well as "the inherent hardship in being absent from work, home, family, and children."  *Id.*  Finally, they contend that California is not the most efficient forum for this litigation, as Defendants are located in either Illinois or Indiana, whereas only Real Action is a California citizen.  *Id.*  Additionally, they assert that Defendants' records are not likely to be in California.  *Id.*

The Court finds that Perfect Circle and Gibson have not met their burden of showing that exercising personal jurisdiction over them would be unreasonable.  They do not address some of the important factors identified by the Ninth Circuit, and their arguments on the other factors are unpersuasive.  While some of the Moving Parties' arguments may have more pull in a different context, the Court cannot look at the claims against them in a vacuum.  UTS, ATO's successor, has brought claims against Real Action in the UTS Case, and Real Action's claims and counterclaims arise out of related events.  Furthermore, neither ATO nor Tiberius or Tiberius Arms challenged personal jurisdiction—on reasonableness grounds or otherwise—meaning they would remain in this forum to litigate the same claims that Perfect Circle and Gibson seek to have

United States District Court
Northern District of California

1   litigated elsewhere.  To arbitrarily sever these claims for adjudication in different districts risks

2   incongruous results as well as problems with judicial economy.  Judicial economy favors this

3   forum at this point, and the fact that UTS brought its claims in this forum further imbues

4   California with an interest in the resolution of these claims.  The Court also notes that there are

5   potentially numerous witnesses in California, including persons connected with Sun LLC, Apon,

6   and the former Pepperball Technologies, which was located in California.  UTS Compl. ¶ 2.

7   Ultimately, Perfect Circle and Gibson have not shown that they would be unduly burdened by

8   litigating in California such that jurisdiction in this district would be unreasonable.

9       In light of the foregoing, the Court finds that personal jurisdiction over Perfect Circle and

10  Gibson in California is reasonable and satisfies due process concerns.  The Court thus turns to the

11  Moving Parties' venue challenge.

12                            **LEGAL STANDARD - VENUE**

13      Pursuant to Federal Rules of Civil Procedure 12(b)(3), a defendant may move to dismiss a

14  complaint for improper venue.  Venue of civil actions is generally governed by 28 U.S.C. § 1391.

15  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013).  A civil

16  action may be filed in

17          (1) a judicial district in which any defendant resides, if all
18              defendants are residents of the State in which the district is
                located;

19          (2) a judicial district in which a substantial part of the events or
20              omissions giving rise to the claim occurred, or a substantial part
                of property that is the subject of the action is situated; or

21          (3) if there is no district in which an action may otherwise be
22              brought as provided in this section, any judicial district in which
                any defendant is subject to the court's personal jurisdiction with
23              respect to such action.

24  28 U.S.C. § 1391(b).  The Supreme Court has indicated "[t]he first two paragraphs of § 1391(b)

25  define the preferred judicial districts for venue in a typical case" whereas "the third paragraph

26  provides a fallback option." *Atl. Marine Const.*, 134 S. Ct. at 578.  Once a defendant has

27  challenged venue, the plaintiff has the burden of demonstrating that venue is proper in the chosen

28  district. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  A

plaintiff who asserts multiple claims must establish that venue is proper as to each one. *Kaia Foods, Inc. v. Bellafiore*, 2014 WL 4966036, at \*4 (N.D. Cal. Oct. 3, 2014) (citing *Adobe Sys., Inc. v. Childers*, 2011 WL 566812, at \*7 (N.D. Cal. Feb. 14, 2011)). If the Court determines venue is improper, the Court must dismiss the action or transfer it to a district or division where it could have been brought. 28 U.S.C. § 1406(a); *Atl. Marine Const.*, 134 S. Ct. at 577.

A plaintiff's choice of venue is generally given substantial weight and a defendant normally "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) ("[U]nless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."). However, "where the forum lacks any significant contact with the activities alleged in the complaint, plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum." *Cohen v. State Farm & Cas. Co.*, 2009 WL 2500729, at \*3 (E.D. Cal. Aug. 14, 2009) (quoting *Knapp v. Wachovia Corp.*, 2008 WL 2037611 at \*2 (N.D. Cal. May 12, 2008); *Amazon.com v. Cendant Corp.,* 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991)); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration.").

**DISCUSSION - VENUE**

"In distinguishing between the principles of jurisdiction and venue," the Ninth Circuit has noted that "'[j]urisdiction is the *power* to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the *convenience* of the litigants.'" *Action Embroidery*, 368 F.3d at 1179 (citations omitted; emphases in original). The Moving Parties have all challenged the propriety of venue in this district. Initially, the Moving Parties only asked that the Court dismiss for lack of venue, but in their Reply, the Moving Parties alternatively requested that the Court transfer the action to another district where they argue venue is proper. Reply at 8-

United States District Court
Northern District of California

22

9.  Notably, ATO, UTS, Tiberius Arms, and Tyler Tiberius do not challenge venue in this district.

Real Action contends that venue is proper in this district under § 1391(b)(2) because a "substantial part of the events or omissions" on which its claims are based occurred in this District, as well as because a "substantial part of the property" that is the subject of these actions is located in this District.  RAP Compl. ¶ 11; UTS Counterclaim ¶ 13.[6]

Under § 1391(b)(2), "[t]o determine whether a substantial part of the events giving rise to the claim occurred in the forum, the court first considers what acts or omissions by the defendants give rise to the plaintiffs' claims."  *Alliance for Multilingual Multicultural Educ. v. Garcia*, 2011 WL 2532478, at *6 (N.D. Cal. June 24, 2011) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)).  The statute "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate."  *Rodriguez v. Cal. Highway Patrol*, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000). Instead, "for venue to be proper, *significant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (citation omitted; emphasis in original).

Real Action has alleged 17 claims in total in the ATO Case.  Against the Moving Parties, Real Action has alleged the following claims:

> 1.  Abuse of process (under Indiana law) – Blumenthal, Piell, Gibson
> 2.  Malicious prosecution (under Indiana law) – Blumenthal, Piell,

---

[6] Despite alleging that Perfect Circle violated Sections 1 and 2 of the Sherman Act (Compl. ¶¶ 100-17), Real Action does not argue that venue is proper under the Sherman Act's broad venue provision, which provides "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."  15 U.S.C. § 22.  This provision was adopted "to broaden venue in antitrust cases and to further the sound remedial policy of allowing an aggrieved party a larger number of available forums in which to litigate."  *Adachi v. Carlyle/Galaxy San Pedro L.P.*, 595 F. Supp. 2d 1147, 1150 (S.D. Cal. 2009) (citations omitted).

Nonetheless, this provision coexists with the general venue statute.  *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1409 (9th Cir. 1989).  And as such, a court may examine whether the plaintiff has pleaded facts to satisfy either the general or the antitrust-specific venue statute.  *Id.*  As Real Action has only asserted venue under the general venue statute, 28 U.S.C. § 1391(b), the Court will only consider the requirements under that statute.

23

Gibson

3. Intentional interference with contractual relations (under Indiana and California laws) – Gibson, Blumenthal
4. Intentional interference with prospective economic advantage (under Indiana and California laws) – Gibson, Blumenthal
5. Tortious conversion (under Indiana and California laws) – Gibson, Blumenthal
6. Criminal conversion (under Indiana law) – Gibson, Blumenthal
7. False designation of origin (15 U.S.C. § 1125) – Gibson
8. Violation of the Sherman Act – Perfect Circle
9. Violation of California's Cartwright Act – Perfect Circle
10. Violation of California Business and Professions Code § 17200 – Perfect Circle
11. Violation of California Business and Professions Code § 17500 – Perfect Circle
12. Unjust enrichment (under Indiana law) – Perfect Circle
13. Conspiracy (under Indiana and California laws) – Blumenthal, Piell, Gibson, Perfect Circle

In the UTS Case, Real Action also alleges a counterclaim of misappropriation of trade secrets against both Blumenthal and Piell under the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426-3426.11.  UTS Counterclaim ¶¶ 47-59.  Real Action has also recently moved to amend its Complaint in the ATO Case to include a substantially similar misappropriate of trade secrets claim against Piell.  *See* ATO Dkt. No. 153-1, ¶¶ 162-74.

A.      **Venue over Claims Asserted in the ATO Case**

Real Action's claims are not all based on substantial parts of events occurring in this District.  For instance, in the ATO Case, venue is inappropriate for Real Action's abuse of process and malicious prosecution claims.  These claims are based on events that occurred in the Northern District of Indiana, where the Indiana Action took place.  RAP Compl. ¶¶ 57-58, 62.  While Real Action argues the service of process on Real Action in California gives rise to the abuse of process and malicious prosecution claims (Opp'n at 19), the act of serving process is insufficient to constitute a "substantial part" of Real Action's claims.  *See Engel v. CBS, Inc.*, 886 F. Supp. 728, 732 (C.D. Cal. 1995) (finding venue in the Central District of California improper under § 1391(b)(2) where "[t]he events giving rise to the claim for malicious prosecution involve[d] the filing and handling of the New York lawsuit, a series of events occurring solely in New York.").  The Court cannot find that this District is a proper venue for these claims standing alone.

Nonetheless, having reviewed Real Actions' 13 claims against the Moving Parties, the Court finds that it may exercise pendent venue over the claims that are not otherwise subject to

United States District Court
Northern District of California

1    venue here on the basis of Real Action's conspiracy claim, which is alleged against all Moving

2    Parties (the Seventeenth Cause of Action, Compl. ¶¶ 134-39).  Once a court has determined that

3    venue is proper as to one claim, it may exercise pendent venue to adjudicate closely related claims.

4    *Martenson v. Koch*, 942 F. Supp. 2d 983, 998 (N.D. Cal. 2013) (citing *Legal Additions LLC v.*

5    *Kowalski*, 2009 WL 1226957, at *11 (N.D. Cal. Apr. 30, 2009); *McNeary-Calloway v. JP Morgan*

6    *Chase Bank, N.A.*, 863 F. Supp. 2d 928, 965 (N.D. Cal. 2012)).  None of the Moving Parties

7    specifically challenge venue in this district for Real Action's conspiracy claim, and, as discussed

8    below, based on the Real Action's allegations, a substantial part of the events giving rise to Real

9    Action's conspiracy claim occurred in California.

10       "Under California law, there is no separate and distinct tort cause of action for civil

11    conspiracy."  *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th

12    Cir. 1997).  Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on

13    persons who, although not actually committing a tort themselves, share with the immediate

14    tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp. v. Litton Saudi*

15    *Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (citing *Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 784

16    (1979)).  "Standing alone, a conspiracy does no harm and engenders no tort liability.  It must be

17    activated by the commission of an actual tort."  *Id.* at 511.  The elements of civil conspiracy are

18    (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done in furtherance

19    of the common design, and (3) the damage resulting from such act or acts.  *Id.*

20       Real Action's conspiracy claim alleges that "ATO, Perfect Circle, Gibson, Tiberius Arms,

21    Tiberius, Blumenthal, and Piell agreed among themselves to engineer a strategy whereby they

22    would be able to remove Real Action from the irritant projectile marketplace."  RAP Compl. ¶

23    136.  As part of this strategy, Real Action alleges that these Defendants conspired to file a lawsuit

24    that "would likely either deter Real Action from further engaging in sales of irritant projectiles or

25    result in a settlement agreement which would largely neuter Real Action's ability to operate in the

26    market place."  *Id.*  Among other things, Real Action alleges that Defendants' strategy in the

27    Indiana Action was to use specific litigation techniques, which Real Action challenges in its

28    malicious prosecution and abuse of process claims, that "would allow ATO to maintain its

United States District Court
Northern District of California

25

United States District Court
Northern District of California

1  position in the irritant projectile market and might impose sufficient costs and attorneys fees in

2  defending the action so as to result in chasing Real Action out of that market." *Id.* ¶ 137.

3      Real Action's conspiracy claim essentially alleges that through the mechanisms of abuse of

4  process and malicious prosecution in the Indiana Action, the Moving Parties were able to commit

5  the torts related to unfair competition and restraint of trade, and those torts are based on events

6  substantially occurring in California.[7]  Specifically, although the events giving rise to the

7  malicious prosecution and abuse of process claims occurred in the Northern District of Indiana,

8  Real Action alleged that the settlement agreement arising out of the Indiana Action interfered with

9  a California contract between Real Action, located in this District, and Sun LLC, located in

10  Southern California.  That contract provided for commerce between Real Action and Sun and

11  Apon in California, and Real Action asserts that the impact of the Settlement Agreement in the

12  Indiana Action was that "California trade was restrained[.]"  Opp'n at 19.  Additionally, Real

13  Action alleges that its ability to compete in the irritant projectile market was "significantly

14  impaired," that it lost "significant profits from sales of irritant projectiles," and that it suffered

15  damage to its "good name and reputation in the business."  RAP Compl. ¶¶ 70, 73.  Real Action

16  felt this harm in the Northern District of California, where it is located.  *See Myers v. Bennett Law*

17  *Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) ("[I]n a tort action, the locus of the injury [is] a

18  relevant factor.").  This general argument is the basis for Real Action's tort claims for intentional

19  interference with contractual relations, intentional or negligent interference with prospective

20  economic advantage, monopoly and combination in restraint of trade under the Sherman Act,

21  combination in restraint of trade under California's Cartwright Act, and unfair competition claims

22  under California Business and Professions Code § 17200.

23      The Court agrees that a substantial part of the events giving rise to the foregoing claims

24  occurred in California.  And because Real Action alleges that those claims and the related

---

25  [7] Additionally, some of the other mechanisms Real Action alleges were used to achieve the
26  conspiracy occurred in this District.  Specifically, Real Action contends Gibson and Blumenthal
unlawfully seized and converted over 180,000 irritant and training projectiles from Real Action in
27  California.  Opp'n at 19; RAP Compl. ¶¶ 85-86.  *See Prou v. Giarla*, __ F. Supp. 3d __, 2014 WL
6725213 at *9-10 (S.D. Fla. Nov. 26, 2014) (venue proper in district where harm arose as a result
28  of alleged conversion, thus constituting a substantial part of the events giving rise to the claim).

conspiracy are based on actions achieved through the commission of malicious prosecution and abuse of process torts, the Court finds those claims, although occurring mostly in Indiana, are closely related to the claims that are properly venued in this District. As such, pendent venue is properly exercised over them.[8]

Finally, the Court notes that while Real Action named other Defendants in these claims, those Defendants have not challenged venue. As such, any future venue challenge is waived as to ATO, Tiberius, and Tiberius Arms. *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("[A] defendant must object to venue by motion or in his answer to the complaint or else his objection is waived." (citations omitted)); *see also Misch on Behalf of Estate of Misch v. Zee Enters., Inc.*, 879 F.2d 628, 631 (9th Cir. 1989) ("Although a party may assert the defense of improper venue either as part of his responsive pleading or by separate motion, . . . he waives the defense if not timely and properly raised." (citations omitted)). For the reasons stated above, the Court finds that venue is proper in this District on all claims presently asserted in the ATO Case.

**B.      Venue over Claim Asserted in the UTS Case**

Finally, in the UTS Case, Real Action currently asserts a claim against Blumenthal and Piell for misappropriation of trade secrets. UTS Counterclaim ¶¶ 42-46. Real Action alleges that Blumenthal and Piell violated a protective order issued in the Indiana Action by the Northern District of Indiana. *Id.* ¶¶ 48, 54. That protective order stated that "highly confidential business information" would be designated as for "attorneys' eyes only" and thus only be disclosed to

---

[8] Importantly, the Ninth Circuit has rejected the idea that a conspirator's in-forum acts can be attributed to his co-conspirators for venue purposes. *See Piedmont*, 598 F.2d at 492. In *Piedmont*, the Ninth Circuit considered whether venue in an antitrust action could be based "solely on allegations that a defendant was a member of a conspiracy and that a co-conspirator performed acts in the forum district." *Id.* The plaintiff argued that because a conspirator committed acts in the venue and a conspirator acts as his co-conspirator's agent, a defendant who otherwise had not conducted business in the forum could be said to have an agent and "transacted business" there under the relevant venue statutes. *Id.* at 492-93. The Ninth Circuit concluded that deeming a conspirator an agent of his co-conspirators would expand the venue statute beyond what Congress contemplated. *Id.* at 494-95.

While *Piedmont* sets limits on the use of a conspiracy claim to establish venue, the Court finds it distinguishable here: the Moving Defendants' *own* acts establish venue in this District. As noted above, Real Action alleges that the Moving Defendants conspired "to remove Real Action from the irritant projectile marketplace" (RAP Compl. ¶ 136) by committing torts, including interference with Real Action's contract and the impact on trade in this District.

United States District Court
Northern District of California

1   attorneys for the parties in the action, experts, and the court.  UTS Dkt. No. 51-2, ¶¶ 10, 15.

2   "Highly confidential business information" included "data quantifying sales."  *Id.* ¶ 10.

3   According to Real Action, it produced documents that contained "data quantifying sales" and

4   properly designated them as for "attorneys' eyes only."  UTS Counterclaim ¶ 53.  Real Action

5   argues venue is proper in the Northern District of California under § 1391(b)(2), because it alleges

6   Piell and Blumenthal's misappropriation damaged Real Action when UTS filed its Motion for

7   Temporary Restraining Order ("TRO") with this Court, which allegedly disclosed the "data

8   quantifying sales" that Real Action had designated as for "attorneys' eyes only" in the Indiana

9   Action.  *Id.* ¶ 56.  Real Action thus contends that a substantial part of the events giving rise to its

10  claim occurred in this District.  Opp'n at 19.  Real Action also argues that its "trade secrets are

11  located where Real Action is located."  *Id.*  As Real Action's principal place of business is in

12  Gilroy, California, "a substantial part of the property that is the subject of this action" is located in

13  this District.  *Id.* (quoting § 1391(b)(2)); RAP Compl. ¶ 1.  Piell and Blumenthal's Reply does not

14  address the issue of venue for Real Action's misappropriation claim.

15          The Court finds that venue is proper over Real Action's misappropriation of trade secret

16  claims against Piell and Blumenthal.  In California, to prevail on a claim for misappropriation of

17  trade secrets, a plaintiff must show that (1) it owned a trade secret; (2) the defendant acquired,

18  disclosed, or used that trade secret through improper means; and (3) the defendant's actions

19  damaged the plaintiff.  *Cytodyn, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297

20  (2008).  Given these elements, a substantial part of the events giving rise to Real Action's trade

21  secret misappropriation claim occurred here as Real Action alleges that it owns trade secrets in

22  California, Blumenthal and Piell assisted UTS in disclosing and using that trade secret in UTS's

23  TRO motion, and Real Action was harmed in California.  *See Myers*, 238 F.3d at 1076; *Integrated*

24  *Practice Solutions, Inc. v. Wilson*, 2013 WL 3946061, at *4 (S.D. Cal. July 31, 2013) (venue in

25  the Southern District of California proper under § 1391(b)(2), where alleged misappropriation of

26  customer lists took place).

27          Venue is therefore appropriate in the UTS Case as well as the ATO Case.

28  //

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

In light of the foregoing, the Court **DENIES** the Moving Parties' Motions for Lack of Personal Jurisdiction and alternatively their Motions to Dismiss or Transfer for Lack of Venue. The above captioned cases are now **CONSOLIDATED** into *United Tactical Systems, LLC v. Real Action Paintball, Inc.*, Case No. 14-4050-MEJ (N.D. Cal.).  All documents shall be filed in Case No. 14-4050.  Additionally, in light of this consolidation, the Court **DENIES** Real Action's Motion to Amend its Complaint, as well as **DENIES WITHOUT PREJUDICE** the pending Motions to Dismiss and Motions to Strike.  The Court **GRANTS** all parties leave to amend their pleadings should they choose to do so.  UTS will have until May 27, 2015 to file any amended complaint, and Real Action will have until June 17, 2015 to file any amended counterclaims.  Any motions pursuant to Rule 12 shall be filed by July 9, 2015.  As noted above, the Court welcomes the parties to agree to a more expedited schedule and will consider such a stipulation if they are able to agree to an alternative timetable.

**IT IS SO ORDERED.**

Dated: May 11, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

\* This Order was originally filed on May 6, 2015 (*see* ATO Dkt. No. 138 and UTS Dkt. No. 174) but has been amended to correct the caption title and internal redactions.  It is the public version of the privately filed Order found at ATO Dkt. No. 139 and UTS Dkt. No. 175.